UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| ROOSEVELT SIMMONS, | ) | CIVIL ACTION NO. 3:16-cv-1083 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| WARDEN C. MAIORANA, *et al.*, | ) | |
| Defendants | ) | |

REPORT & RECOMMENDATION
*Defendants' Motion to Dismiss (Doc. 20)*

On June 6, 2016, Roosevelt Simmons ("Plaintiff") a former inmate who was housed at United States Penitentiary ("USP") Canaan, in Waymart, Pennsylvania initiated this *pro se* civil action against the following defendants: Warden C. Maiorana; Associate Warden Jared Rardin; and Former Warden J. Ray Ormond, (collectively "Defendants"). (Doc. 1).

Presently before the Court is a Motion to Dismiss, filed by Defendants. (Doc. 20). After receiving extensions of time and leave to exceed the page limit, Defendants filed a Brief in Support of their Motion to Dismiss. (Doc. 27). On December 7, 2018, the Court issued an Order advising Plaintiff of his obligation to file a brief in opposition to Defendants' Motion. (Doc. 26). On December 17, 2018, the Court issued a second Order, granting Plaintiff until January 8, 2019 to respond to Defendants' Motion. (Doc. 29).

Defendants in this case are federal actors. Therefore, their interests are being represented by the United States Attorney's Office of the Middle District of

Pennsylvania ("U.S. Attorney's Office"). On December 27, 2018, an Order was issued staying all deadlines in cases where a party's interests were being represented by the U.S. Attorney's Office due to a lack of appropriations. The deadlines in Plaintiff's case were stayed pursuant to this Order. On January 30, 2019, the stay was lifted. The deadlines in each pending case were extended thirty-four days. Therefore, Plaintiff's brief in opposition, originally due on January 8, 2019, was due on February 21, 2019.

To date, Plaintiff has not filed a brief in opposition. Accordingly, it is RECOMMENDED that:

(1)     Plaintiff's Complaint be DISMISSED pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, without further leave to amend; or in the alternative,

(2)     Defendants' Motion to Dismiss (Doc. 20) be granted.

I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

On June 6, 2016, Plaintiff initiated this *Bivens* lawsuit against Warden C. Maiorana (Warden of USP Canaan), Jared Rardin (Associate Warden at USP Canaan), and J. Ray Ormond (former Warden of USP McCreary) by filing a Complaint (Doc. 1), Memorandum of Law (Doc. 2), and Exhibits (Doc. 5). As noted by Defendants, Plaintiff's Complaint (Doc. 1) and Memorandum of Law are "rambling," "laced with legal argument," and reference the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as the Administrative Procedures

Act. (Doc. 27, p. 10). As relief, Plaintiff requests $200,000.00 in compensatory damages. (Doc. 1, p. 3).

On November 19, 2018, Defendants filed a Motion to Dismiss. (Doc. 20). On December 7, 2018, after being granted an extension of time, Defendants filed a Brief in Support. (Doc. 27). To date, Plaintiff has not filed a brief in opposition.

I have addressed Plaintiff's allegations in sections in an attempt to discern the nature of his claims.

A.    PLAINTIFF'S CIVIL LAWSUITS PENDING DURING THE RELEVANT PERIOD

In his Complaint (Doc. 1) and Memorandum (Doc. 2), Plaintiff references three pending lawsuits that were affected by his lack of access to stamps. The Procedural history and resolution of these lawsuits is summarized below.

1.    Simmons v. USA, No. 5:11-CV-0057 (N.D. W.Va.)

In 2011, Plaintiff filed a motion to vacate, set aside or correct his sentence in the United States District Court for the Northern District of Virginia. *See Simmons v. USA*, 5:11-CV-0057 (N.D. W.Va.). In May of 2014, Plaintiff's Motion to vacate, set aside or correct his sentence was denied by the District Court. *Simmons v. USA*, No. 5:11-CV-0057, ECF Doc. No. 12 (N.D. W.Va. May 28, 2014). On June 9, 2014, Plaintiff filed a Notice of appeal. *Simmons v. USA*, No. 5:11-CV-0057, ECF Doc. No. 15 (N.D. W.Va. June 9, 2014).

On October 24, 2014, the Fourth Circuit Court of Appeals declined to issue a certificate of appealability in Plaintiff's case and dismissed his appeal. *U.S. v. Simmons*, No. 14-6877, ECF Doc. No. 8 (4th Cir. Oct. 24, 2014). Plaintiff argues that he planned to either file a motion for reconsideration or appeal the Fourth Circuit's decision dismissing his appeal to the Supreme Court of the United States but was unable to do so because he did not have access to postage stamps.

2.    Simmons v. Staff at *USP-Coleman,* No. 5:12-CV-0315 (M.D. Fla.)

On May 1, 2012, Plaintiff filed a Complaint in the Middle District of Pennsylvania—later transferred to the Middle District of Florida—alleging that certain staff members at USP Coleman illegally collected Plaintiff's DNA. (Doc. 1). On December 11, 2012, Defendants filed a Motion to Dismiss Plaintiff's Complaint. (Doc. 29). On July 8, 2013, the Court granted Defendants' Motion and dismissed Plaintiff's Complaint with prejudice. (Doc. 36).

On July 22, 2013, Plaintiff filed a Notice of Appeal. (Doc. 38). On August 14, 2014, the Eleventh Circuit issued an Opinion affirming the District Court's decision. (Doc. 41). On September 8, 2014, Plaintiff filed a petition for rehearing. *Simmons v. K. Cimock,* No. 13-13392 (11th Cir.). On October 21, 2014, the Eleventh Circuit Court of Appeals denied Plaintiff's petition for rehearing. *Id.*

3.    Simmons v. Ebbert, No. 3:14-CV-1422 (M.D. Pa.)

On July 24, 2014, Plaintiff filed a § 2241 Petition in the United States District Court for the Middle District of Pennsylvania in which he argued that the BOP erred when it determined that Plaintiff's conviction precluded him from participation in, and early release upon completion of, the prison's 500-hour Residential Drug Abuse Program. *Simmons v. Ebbert,* No. 3:14-CV-1422, ECF Doc. 1 (M.D. Pa. July 24, 2014). On December 4, 2015, U.S. Magistrate Judge Karoline Mehalchick issued a Report recommending that the Petition be dismissed. *Simmons v. Ebbert,* No. 3:14-CV-1422, ECF Doc. 15 (M.D. Pa. July 24, 2014). Plaintiff filed objections in February and March of 2016. *Simmons v. Ebbert,* No. 3:14-CV-1422, ECF Docs. 18, 20 (M.D. Pa.). On April 18, 2016, U.S. District Judge James M. Munley issued a Memorandum and Opinion adopting Magistrate Judge Mehalchick's recommendation. *Simmons v. Ebbert,* No. 3:14-CV-1422, ECF Docs. 21, 22 (M.D. Pa. Apr. 18, 2016).

Plaintiff did not file an appeal.

B.     PLACEMENT IN THE SHU AT USP COLEMAN

Plaintiff alleges that he was placed in the SHU at USP Coleman in retaliation for filing a lawsuit against the staff at USP Coleman. Specifically, Plaintiff alleges:

> Because Petitioner had challenged the early taken of his DNA, in violation of the BOP-Policy, while Petitioner was on appeal proceedings challenging his conviction. Petitioner had know problem giving his DNA sample as long as it was in the "constitutionally

established time frames." The staff at Colemen-2 wanted the sample
now, in violation. Petitioner started the remedy process, alleging a
lawsuit against executive staff. Petitioner was placed in a (S.I.S.)
special investigation service, investigation, put in the (SHU) Special
Housing Unit, locked down 24-hours a day, 20-days later transferred
to USP-Canaan.

(Doc. 2, p. 17) (spelling and grammatical errors in original).

### C. PARTICIPATION IN THE INMATE FINANCIAL RESPONSIBILITY PROGRAM

Plaintiff alleges that when he arrived at USP Canaan, he was given the

choice to participate in the inmate financial responsibility program.[1] Plaintiff chose

not to participate and was placed in "FRP Refuse" status. Inmates who refuse to

participate in the financial responsibility program are denied certain privileges,

including, but not limited to no performance pay above the maintenance pay level,

a monthly spending limit, and being quartered in the lowest housing status. *See* 28

C.F.R. § 545.11(d).

Plaintiff alleges:

On arrival at USP-Canaan, Petitioner continued the Administrative
Remedy process on the lawsuit, his post-conviction relief, and a
number of other remedies. As stated in a "retaliatory conspiracy." I
was place [sic] in (FRP) refuse status, (which is voluntary) financial
responsibility program. I did not volunteer for! As a result, I was
scores as a high security with in custody, denied to go to a (F.C.I.)
Med. Institution, I was scored as poor living skills, "and inmates in

---

[1] As explained by the Third Circuit in *McGee v. Martinez,* "[t]he IFRP is meant to
"encourage[] each sentenced inmate to meet his or her legitimate financial
obligations." 28 C.F.R. § 545.10. Those financial obligations generally consist of a
fine, an order for restitution, and/or a special assessment imposed as part of a
criminal judgment." 627 F.3d 933, 936 (3d Cir. 2010).

FRP-Refuse will be scores with -0 points regardless of any other program achievements." And I was payed $5.25 a month, force to work for $5.25 a month and if I did not I was told I would be put in solitary-confinement, the (SHU) for not programming. The same programs, regardless of any other programs achievements, scored with -0 points.

(Doc. 2, p. 17). Plaintiff also alleges that he was kept in this program from 2011 to 2015 as a punishment. (Doc. 2, p. 22).

D.    PLAINTIFF'S ACCESS TO POSTAGE STAMPS IN 2014 AT USP CANAAN

On August 25, 2014, Plaintiff was given the following letter from Associate Warden G. Miller:

It has recently come to my attention that you have incurred a significant debt with the institution. This debt was partly incurred due to staff providing you additional stamps and copies for correspondence at your request. As you know, pursuant to program statement 5265.14, Correspondence, postage charges are the responsibility of the inmate.

As of the date of this letter, staff will be directed to no longer provide you with additional postage or copies upon your request. From this point forward you will be provided with five postage stamps each week for the specific purpose of legal and/or Administrative remedy filings.

(Doc. 5, p. 36).

Plaintiff alleges that as of that date he was "right in the middle of post-conviction appeals." Plaintiff does not provide a case name or number of the appeal at issue.[2]

On September 17, 2014, Plaintiff filed a "BP-9" also known as a "Request for Administrative Remedy to address this issue. (Doc. 2, p. 35). In this remedy, Plaintiff requested clarification as to Program Statement No. 5265.14. Plaintiff expressed the position that this policy "does not state if an inmate incurred a significant debt, he will not receive legal postage or copies." (Doc. 5, p. 38). The exhibits filed by Plaintiff include a response to a request for an Administrative Remedy, received by Warden Ebbert's office on September 17, 2014. *Id.* Warden Ebbert construed Plaintiff request for administrative remedy as a request for clarification of Program Statement No. 5265.14. Warden Ebbert responded:

> Program Statement 5265.14, Correspondence, states, "An inmate who has neither funds nor sufficient postage and who wishes to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage stamps for such mailing. To prevent abuses of this provision, the Warden may impose restrictions on the free legal administrative remedy mailings. To prevent abuse of Bureau directives regarding the purchase of postage, Wardens will provide an inmate who has neither the funds no postage up to five postage stamps (denominations for first-class, domestic, 1-ounce mailing) or the

---

[2] I reasonably infer that he is referring to his § 2255 Petition. Review of the Fourth Circuit docket associated with this case reveals that, Plaintiff filed his appellate brief on July 10, 2014, Plaintiff filed a request for a file-stamped copy of his brief on August 19, 2014. *US v. Simmons*, No. 14-6877 (4th Cir.). Plaintiff did not make, and the Court did not require, any further briefing in this case before it issued its decision in October 2014. *Id*

equivalent each week, for legal mail or Administrative Remedy filing." A review of this matter revealed in accordance with Program Statement 5264.14, Correspondence, staff utilize sound correctional practices in assessing your requests for indigent postage stamps and photo copies.

*Id.*

Plaintiff argues that this response is "incomplete" and has attached an excerpt of Program Statement No. 5265.14. (Doc. 5, p. 37). I infer that Plaintiff argues that, to the extent his postage needs exceed five stamps per week, he should be permitted to obtain as many government-paid postage stamps as necessary using a BP-199 reimbursement form. It appears that Plaintiff was not able to resolve these issues with Warden Ebbert.

On or around November 2014, a new Warden—Warden C. Maiorana ("Defendant Maiorana")—was assigned to USP Canaan. Plaintiff alleges that in November 2014 he filed a "Request to Staff" about his need for more postage stamps and addressed it to Defendant Maiorana. Plaintiff's written request is not among the documents provided. However, in his response, Defendant Maiorana wrote:

An initial review into this matter revealed you were given 15 indigent postage stamps for the month of November 2014, and a total of 900 indigent postage stamps beginning July 1, 2014, through November 20, 2014. A review of Program Statement 5265.14, Correspondence, reveals, "An inmate who has neither funds nor sufficient postage and who wishes to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage stamps for such mailing. To prevent abuses of this provision, the Warden may

impose restrictions on the free legal and Administrative Remedy mailings. To prevent abuse of Bureau directives regarding purchase of postage, Wardens will provide an inmate who has neither funds no postage up to five postage stamps (denominations for first-class, domestic, 1-ounce mailing) or the equivalent each week, for legal mail or Administrative Remedy filing." Accordingly, staff will continue to utilize sound correctional practices in assessing your requests for indigent postage stamps and photo copies.

(Doc. 5, p. 39).

On November 24, 2014, Plaintiff attempted to informally resolve his need for more postage stamps. (Doc. 5, p. 20). In response, Plaintiff was advised that Staff had been directed to no longer provide him with copies or postage at his request, and that he would be provided with five stamps per week. (Doc. 5, p. 21). Plaintiff was also advised that his requests for legal copies would be determined on a case-by case basis. *Id.* Plaintiff requested a BP-9 to file a formal Administrative Remedy Request. *Id.* Plaintiff alleges that he filed the BP-9 on December 15, 2014. (Doc. 2, p. 10); *see also* (Doc. 5, p. 18) (Plaintiff's BP-9, Administrative Remedy No. 804801-F1). On December 23, 2014, Defendant Maiorana denied Plaintiff's request for an Administrative Remedy, once again explaining that Plaintiff would be limited to five government-paid postage stamps per week. (Doc. 5, p. 40).

As a result of these actions, Petitioner alleges that Defendants Maiorana, and Rardin have "violated Petitioner's constitutional rights of access to court in appealing 'post-conviction relief' as well as exhaustion of a number of administrative remedies seeking formal review of issues relating to aspect of his

incarceration, such as good conduct time not given, medical issues, as well as disciplinary punishment, all issues of constitutional argumentation under the due process clause." (Doc. 2, p. 14).

E.    AMOUNT OF DEBT OWED BY PLAINTIFF

One of the exhibits filed with Plaintiff's Complaint is an institutional response to a Request for Administrative Remedy filed on July 3, 2015. (Doc. 5, p. 47). In his request, Plaintiff asked to know the amount he currently owed to the government, and for an explanation of the policy that governs his indebtedness. *Id.* On July 15, 2015, Defendant Maiorana provided the following response:

> A review was conducted in this matter and revealed that as of July 10, 2015, you owe the government $5,377.22. The policy which covers debt recovery is Program States 4500.11 Trust Fund/Deposit Fund Manual, and Program Statement 2013.02 Financial Management - Debt Management.

*Id.* I infer that a "hold" or encumbrance on Plaintiff's available account balance for some amount. It is not clear if a hold has been placed on the account for the full $5,377.22.

Plaintiff alleges that "the institution claims the debt is at 5,377.22. Petitioner disputes this amount and is in the administrative process to resolve this issue. Plaintiff also alleges:

> Petitioner begun to challenge the alleged debt as significant, in the response from Warden C. Maiorana, claimed I owed the Government 5,377.22 was insane, false, inaccurate, inadvertent error. As the Petitioner, I have never received 5,377.22 in postage or copies at most

maybe $1,500. Counting (Petition court cost, $350.00, $350.00, $450.00= $1,159.00, for a total of $2,650.00). As proof Petitioner challenges the prison staff to produce the (BP-199, forms) request for withdrawn of inmate's personal funds, a green form. Which the inmate himself will fill-out, print inmate name and signature and purpose. I personally would print the date if filled-out the document just for these reasons. NOTE: to the court of the United States Department of Justice, Federal Bureau of Prisons, DO NOT PHOTOCOPY at the top right of the BP-199.045 green form. This is strategic to the prison officials in cases such as this to prevent an inmate proof of what he may really owe as to the truth, by law. I have provided a copy to the court in the challenge to prison staff to produce these signed forms (by Petitioner) adding-up to the sum alleged.

(Doc. 2, p. 18) (capitalization in original).

F.      ENCUMBERED FUNDS & INDIGENCY

On June 9, 2015, Defendant Maiorana received a Request for Administrative Remedy filed by Plaintiff. (Doc. 5, p. 45). In this request, Plaintiff asked to spend his encumbered funds for postage stamps, legal mail/copies, over the counter medications and costs associated with obtaining his social security card and birth certificate. *Id.* In response, Defendant Maiorana wrote:

A review was conducted in this matter and revealed this issue was addressed on your Inmate Request to Staff," dated March 23, 2015. Indigent status would indicate you have not had a balance of $6.00 or more for the past thirty (30) days. A review of your TRUFACS inmate account balance, performed on June 18, 2015, revealed a current balance of $28.25 and the last 6 month deposits at $15.87. Therefore you are not indigent. The government will not take partial payment on a debt therefore you must pay the debt in full to have the encumbrance removed. If you stop generating debt, you have enough income to have the encumbrance removed.

*Id.*

Plaintiff alleges that his account balance of $28.25 was encumbered funds, and that he essentially had no access to any funds due to his encumbered debt. (Doc. 2, p. 16). Plaintiff argues that, even though his account balance was $6.00 or more, he should have been considered as an "indigent inmate" because he had no access to funds. *Id.* In his memorandum, Plaintiff contends:

> This was all in retaliatory conspiracy that started in USP-Coleman-2, following Petitioner in and through his central file. To monitor, impede, obstruct, to prevent, avert and hinder Petitioner's access to the court. Because Petitioner had challenged the early taken [sic] of his DNA, in violation of BOP-Policy, which Petitioner was on appeal proceedings challenging his conviction.

(Doc. 2, p. 17). I note however, that *Simmons v. USP-Coleman*, the case involving the taking of a DNA sample, had been closed in October 2014—well before his June 2015 Administrative Remedy request was filed.

G.      2015 DISCIPLINARY ACTION AT USP CANAAN

Plaintiff alleges that a false incident report was issued by Defendants. He does not say which Defendants were involved, what prison, or what date it was issued. (Doc. 2, p. 29). Plaintiff did allege that he was cited for "threatening an officer." *Id.* The exhibits filed with Plaintiff's Complaint include an incident report from USP Canaan dated August 3, 2015 in which Plaintiff was cited for: threatening another with bodily harm or any other offense; refusing to obey an order of any staff member; and possession of gambling paraphernalia. (Doc. 5, p. 54). The incident report includes the following description of the event:

On August 3, 2015 I was pat searching inmates who leaving the inmate dining room. I called over inmate Simmons, Roosevelt # 05942-087 for a pat search. Before pat searching inmate Simmons I asked him to remove anything from his back pockets. I notice he has an apple and other food service items still on his person. I gave him an order to throw the apple and other food service items in the trash. He threw the apple missing the garbage can; I gave him an order to pick up his trash, he refused and tried to hide the condiment packets in his pocket. I inspected the contends that inmate Simmons removed from his pockets and he had 4 gambling slips. I asked what he was doing with them "he stated go ahead and write me up, I have something for you". I asked the inmate what he meant by that he said "you will find out, I will get you".

(Doc. 5, p. 54). On the incident report, it says that Plaintiff made the following comment to the Committee: "I wanted the camera reviewed on the day it happened, but they didn't do it. This is stemming from the administrative remedies I have been filing." *Id.* The charges were referred to DHO. *Id.*

Plaintiff alleges:

As of February 2016, pursuant to this law-suit and memorandum of law, in a retaliatory conspiracy to block access to the courts- and -the filing of this law-suit against the Defendants. After the Defendants had there staff file a false incident report, claiming I threatened an Officer, without alleging a threat in the report. The (DHO) discipline hearing officer, claiming I elected not to make a statement pertinent to the charge, in summarium, Simmons/petitioner refused to involve a defense, cite the probative value of the camera footage being saved and reviewed, or draw any nexus to which media would exonerate me of the charge. When the truth is, I requested the camera footage to show the Warden C. Maiorana was there, on cite and "witnessed the incident" along with (5) other officers, also the camera footage "PHYSICALLY" falsified his allegations in his incident report showing the officer lied, and has know credibility. Defendant Warden, C. Maiorana knew this.

(Doc. 2, p. 30).

H.    TRANSFER TO USP MCCREARY

Plaintiff appears to allege that the 2015 allegedly false incident report was filed against him so that he would be transferred to another prison, and that he was transferred from USP Canaan to USP McCreary in retaliation for filing this lawsuit. Plaintiff alleges:

> The Defendants; at USP-Canaan purpose of the proceedings was to have me transferred to USP McCreary where Warden Ormond became a part of this retaliatory conspiracy to block access to the courts, and the filing of this law-suit against the Defendants. In the same unconstitutional misconduct, in denying Petitioner (as a "indigent inmate," and "inmate without funds" means an inmate without sufficient commissary balance to purchase postage stamp sufficient for first-class 1-ounce domestic mailing; or require an inmate who has, for at least two separate months, depleted his/her commissary account, obtained government-paid postage stamps—or legal copies, to complete the (BP-99) form for reimbursement, request for withdrawal of inmate's personal funds for the amount of postage or legal copies given for legal mail or administrative remedy filings.)

(Doc. 2, p. 30).

I.    PLAINTIFF'S ACCESS TO POSTAGE AT USP MCCREARY IN 2016

Plaintiff was transferred from USP Canaan to USP McCreary in December of 2015. (Doc. 2, p. 29). Plaintiff alleges that, he had a "an open-pending court case, and deadline to file a response in a action under § 2241." *Id.* He appears to be referring to *Simmons v. Ebbert*, No. 3:14-CV-1422 (M.D. Pa.).

Plaintiff alleges:

I requested the stamps, legal postage and copies from my unit team for this legal procedure specifically Unit Mgr. Anderson, at the direction of A.W. Barron told me they need to "see" my documents, upon presentation, Anderson read my legal document, made sure they were not in the filing of the law-suit on the USP-Canaan Defendants, then and only then was I provided the legal materials, Anderson even stated, "this is not about that lawsuit, is it?" I said no it is not. I filed remedies on the issue of reading my legal documents.

(Doc. 2, p. 29).

The exhibits filed with Plaintiff's Complaint include responses to Plaintiff's postage stamp related request for administrative remedies. On January 13, 2016, Plaintiff filed a request for administrative remedy alleging that his Unit Manager refused to provide Plaintiff postage for legal mail. (Doc. 5, p. 58). In response, Acting Warden R.S. Salinas wrote:

A review was conducted and found after you provided documentation to your Unit Team indicating an open legal case in court, you were provided with 30 stamps on January 6, 2016, and 19 stamps on February 1, 2016. This allocation of stamps actually exceeds the recommended amount of postage to be provided to inmates in accordance with Program Statement 5265.14, Correspondence.

Id.

On February 25, 2016, Plaintiff filed a second administrative remedy request related to the availability of stamps and Unit Manager Anderson's request that Plaintiff provide verification of a legal issue before providing stamps. (Doc. 5, pp. 59-60). Defendant Ormand responded that:

If you are requesting free legal and administrative remedy stamps in accordance with Program Statement 5265, Correspondence, your Unit

Team will need to verify that an actual legal or administrative remedy issue exists prior to providing free stamps.

(Doc. 5, p. 61).

Plaintiff alleges that:

Defendant Warden Ormond refused to provide Petitioner with (any postage or copies, or BP-10s, the Regional Administrative Remedy Appeal forms, to file as "sensitive" under staff misconduct). Petitioner made a record with e-mails, and the warden Ormond took all Petitioner's ability to purchase document copies of these e-mail, showing the Warden Ormond's unconstitutional conduct as evidenced in his and his staff's responses that they all knew what they were doing in blocking access to the court and the filing of this law-suit. Petitioner still attempting to retrieve this evidence from the inmates computer system that Warden Ormond controls and will not allow me to have this evidence against him and his staff.

. . . .

As of February 2016, Defendant J. Ray Ormond, Warden has conspired with Defendant's C. Maiorana, Warden and Jared Rardin, A.W. (P.) The evidence of Defendant J. Ray Ormond are within the e-mails, records that he controls.

(Doc. 2, pp. 31-32).

## II. LEGAL STANDARD FOR DISMISSAL UNDER RULE 41(B)

Rule 41(b) of the Federal Rules of Civil Procedure authorize a district court to dismiss a civil action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Decisions regarding dismissal for a failure to prosecute rest within the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). However, such discretion is governed by six factors,

commonly referred to as the *Poulis* factors. *See Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

Under *Poulis*, courts are required to balance the following factors when deciding whether to dismiss a complaint under Rule 41(b):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.*

The *Poulis* factors do not constitute a bright-line rule, nor is there a "magic formula or [a] mechanical calculation to determine whether a District Court abused its discretion in dismissing a plaintiff's case." *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)); *see also Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011). However, while "no single *Poulis* factor is dispositive, . . . not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Briscoe*, 538 F.3d at 263. Instead, district courts must balance all six factors together, while ensuring that dismissals are supported by an adequate foundation and "[any] doubts should be resolved in favor of reaching a decision on the merits." *Adams v. Trs. of N.J. Brewery Emps. Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994); *see also Hildebrand v. Allegheny Cty.*, 2019 WL 1783540, at 7* (3d Cir. Apr. 24, 2019) (highlighting that the Third

Circuit Court of Appeals has "never upheld a court's dismissal when it was supported by an inadequate foundation on even one of the *Poulis* factors").'

III.    ANALYSIS

A.    THIS CASE SHOULD BE DISMISSED UNDER FED. R CIV. P. 41(B)

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) (citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as *Poulis* factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir.1984).

*Emerson,* 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (quoting *Briscoe v. Klaus*, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the *Poulis* factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case.." *Briscoe*, 538 F.3d at 263 (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir.1992)). Consistent with this view, it is well-settled that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Briscoe*, 538 F.3d at 263 (internal citations and quotations omitted). Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. *See, e.g., Emerson*, 296 F.3d 184; *Tillio v. Mendelsohn*, 256 F. App'x 509 (3d Cir. 2007); *Reshard v. Lankenau Hospital*, 256 F. App'x 506 (3d Cir. 2007); *Azubuko v. Bell National Organization*, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the *Poulis* factors weighs heavily in favor of the sanction of dismissal.

The first *Poulis* factor, the extent of Plaintiff's personal responsibility, weighs in favor of dismissal. Plaintiff is required to file a brief in opposition. L.R. 7.6. Plaintiff was advised of this requirement when he was provided with a copy of the Court's Standing Practice Order in Pro Se Plaintiff cases ("Standing Order 94-2) (Doc. 8), and in Orders issued on December 7, 2018 (Doc. 26) and December 17, 2018 (Doc. 26). Because Plaintiff was aware of this obligation, the failure to file a brief in opposition cannot be attributed to anyone but Plaintiff. Thus, he is personally responsible for failing to meet this obligation.

The second *Poulis* factor, the prejudice to Defendants caused by Plaintiff's failure to respond to Defendants' Motion, also weighs in favor of dismissal. Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware,* 322 F.3d at 222. "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id.* Therefore, Plaintiff's failure to litigate this case by complying with court rules requiring him to file a brief in opposition, and multiple court orders directing him to do so, frustrates and delays the

resolution of this action. This failure to litigate results in prejudice to Defendants, who seek to timely resolve this action.

The third *Poulis* factor, history of dilatoriness, is neutral in this case. While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe,* 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. of N.J. Brewery Emp. Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). A "party's problematic acts must be evaluated in light of [her] behavior over the life of the case." *Id.* at 875. Responding to Defendants' Motion to Dismiss was Plaintiff's first significant deadline in this case. Thus, the Court cannot say that Plaintiff has repeatedly failed to respond or has submitted tardy responses in this case. Because Plaintiff's diligence in responding to deadlines and court orders is untested in this case, his failure to respond to Defendants' Motion to dismiss does not weigh in favor, or against, the sanction of dismissal.

The fourth *Poulis* factor, whether Plaintiff's failure to respond to Defendants' Motion was willful or in bad faith, weighs in favor of dismissal. "Willfulness involves intentional or self-serving behavior." *Adams,* 29 F.3d at 875. Here, Plaintiff was repeatedly advised of his obligation to file a brief in opposition to Defendants' Motion to Dismiss but did not do so. Therefore, his failure to

comply with the Court's Orders leads to an inference that he has willfully abandoned this case.

The fifth *Poulis* factor, the effectiveness of other sanctions, weighs in favor of dismissal. Dismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal. *Poulis,* 747 F.2d at 868. Plaintiff is proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions. Moreover, Plaintiff's failure to comply with the Court's orders directing him to file a brief in opposition leads to an inference that further orders would not be effective. Therefore, no other sanction would be effective.

The sixth *Poulis* factor, the meritoriousness of Plaintiff's claims, also weighs in favor of dismissal. In this inquiry, a claim will be deemed meritorious when the allegations of the complaint, if established at trial, would support recovery. *Poulis,* 747 F.2d at 870. A review of Plaintiff's Complaint (Doc. 1), in conjunction with the Memorandum (Doc. 2) and Exhibits (Doc. 5), reveal that Plaintiff's claims fail on their merits. The flaws inherent in these claims are discussed separately below.

B.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

At the outset, it is not clear from Plaintiff's extremely confused factual narrative what exactly legal claims he is attempting to assert. Although Plaintiff's Memorandum is sprinkled with references to various constitutional amendments

that he alleges were violated, it is difficult to determine what conduct is the basis for what claim.

Rule 8 of the Federal Rules of Civil Procedure explains that, a Complaint must contain, "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Dismissal under Rule 8 is when a complaint leaves "the defendants having to guess what of the many things discussed constituted [a cause of action];" *Binsack v. Lackawanna County Prison*, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. *Tillio v. Spiess*, 441 F. App'x 109 (3d Cir. 2011). Similarly, dismissal is appropriate in "'those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Tillio v. Spiess*, 441 F. App'x 109, 110 (3d Cir. 2011) (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995)); *Tillio v. Northland Grp. Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012). Thus, Plaintiff's claim should be dismissed under Rule 8 of the Federal Rules of Civil procedure.

However, a *pro se* Complaint, like this one, must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Construing Plaintiff's Complaint, Memorandum, and

Exhibits *very* liberally, Defendants argue that Plaintiff seems to assert the following *Bivens* claims:

> (1) First Amendment based on the alleged denial of access to courts and retaliation; (2) Fourth or Fifth Amendment lack of due process concerning access to courts, taking his monthly earnings to repay a debt encumbrance, a falsified disciplinary incident report and his SHU placement; and (3) the Eighth Amendment for unlawful conditions of confinement following his placement in IFRP refuse status and, for subjecting him to confinement in the SHU.

(Doc. 27, p. 16).

In their Motion to Dismiss, Defendants argue that Plaintiff's Complaint should be dismissed for three reasons: (1) the Court lacks personal jurisdiction over Defendant Ormond; (2) *Bivens* should not be expanded to the "new context" claims alleged by Plaintiff; and (3) Plaintiff failed to allege sufficient personal involvement to state a plausible *Bivens* claim. For the reasons explained below, I am persuaded by Defendants' second argument, that *Bivens* has not been, and should not be, extended for the claims alleged by Plaintiff. Therefore, I need not address Defendants' first and third arguments.

Although Congress established a damages remedy under 42 U.S.C. § 1983 against state officials for violations of the federal constitution, it did not create an analogous statute for damages against federal officials. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, however, the Supreme Court "recognized for the first time an implied private action for damages against federal

officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

In *Bivens*, agents acting under claim of federal authority entered a man's apartment without a warrant, arrested and handcuffed him, and searched the residence for drugs. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). Thereafter, the man was taken to a courthouse, interrogated, booked, and subjected to a visual strip search. *Id.* The man sued the agents for damages, alleging that the warrantless search and the arrest violated his rights under the Fourth Amendment to the United States Constitution. *Id.* The District Court dismissed the man's lawsuit because the man failed to state facts making out a cause of action. *Id.* at 390. The Court of Appeals affirmed. *Id.* The Supreme Court reversed. In doing so, the Court held that there is an implied private cause of action for damages for a federal officer's violation of a person's Fourth Amendment rights and explained that while Congress had not created a private cause of action against federal officials for damages, the Supreme Court has the power to "adjust . . . remedies so as to grant the necessary relief" to protect a constitutional right." *Id.* at 392.

Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200. As noted recently by another Court, the Supreme Court has recognized an implied private action against federal officials in only three cases:

> (1) *Bivens* itself—"a claim against FBI agents for handcuffing a man in his own home without a warrant" under the Fourth Amendment; (2) "a claim against a Congressman for firing his female secretary" under the Fifth Amendment; and, (3) "a claim against prison officials for failure to treat an inmate's asthma" under the Eighth Amendment.

*Karkalas v. Marks*, No. 19-1948, 2019 WL 3492232 at *7 (E.D. Pa. July 31, 2019) (internal footnotes omitted). Because expanding *Bivens* is "a 'disfavored' judicial activity," *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017), a "rigorous injury . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants," *Vanderklok*, 868 F.3d at 200.

The first step of this inquiry is to determine whether the claims at issue present a new context. A *Bivens* claim presents a new context if "the case is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. Examples of "meaningful differences" include but are not limited to:

> The rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1848. Furthermore, as discussed above, Courts have declined to extend *Bivens* beyond the specific clauses of already recognized claims or to new classes of defendants. Therefore, a material difference exists when a claim is asserted under a different clause of a constitutional amendment that has been found to give rise to a *Bivens* claim, or where the claim involves a new class of defendants.

Once the Court has identified that the claim presents a new context, it must decide whether to imply a new *Bivens* remedy to that claim. In doing so, the Court should consider: (1) whether there is any "alternative, existing process capable of protecting the constitutional interests at stake," *Vanderlock*, 868 F.3d at 200; and (2) whether there are "special factors counseling hesitation in the absence of affirmative action by Congress," *Ziglar*, 137 S. Ct. at 1857.

In conducting the special factors inquiry, the court "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. *Id*. at 1857. As discussed in *Ziglar*:

[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damage remedy as part of the system of enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Id.* at 1858. Thus, Courts should assess the impact on governmental operations systemwide, including the "burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.*

      1.     Whether Plaintiff's First, Fourth, Fifth, and Eighth Amendment Claims Present a New Context that has not Been Recognized by the Supreme Court in Previous *Bivens* Cases

Plaintiff is asserting First Amendment claims of retaliation and denial of access to courts due to Defendants' failure to provide an unlimited amount of free postage stamps. Although courts have decided cases based on the assumption that *Bivens* extended to First Amendment claims, the Supreme Court has never held that *Bivens* extends to First Amendment claims. *Randolph v. FCI Allenwood*, 2018 WL 2276246 at *9 (Apr. 24, 2018) *report and recommendation adopted by* 2018 WL 2263733 (May 17, 018). Because Plaintiff's First Amendment claims involve different constitutional rights than have been recognized in previous *Bivens* cases, they are meaningfully different and present a "new context."

To the extent Plaintiff is asserting a Fourth Amendment claim, the Supreme Court recognized an implied private action against federal officials under the

Fourth Amendment in *Bivens*. That claim, however, involved a warrantless arrest and warrantless search of a residence. Here, Plaintiff appears to allege that Defendants seized money from his bank account without a warrant. Without considering whether Plaintiff's allegations actually state a cognizable Fourth Amendment claim, because *Bivens* involves the seizure of a person and physical property from a home, and Plaintiff's claim involves whether the Defendants properly placed encumbrances on his inmate account to cover debts owed to the government, I find that Plaintiff's claim is materially different from the *Bivens* claim recognized by the Supreme Court in *Bivens*. Therefore, Plaintiff's Fourth Amendment claim presents a "new context."

To the extent Plaintiff is asserting a Fifth Amendment due process claim, the Supreme Court recognized an implied private action against federal officials under the Fifth Amendment for a due process claim in *Davis v. Passman*, 442 U.S. 228 (1979). *Davis*, however, involved a claim against a Congressman for firing his female secretary. *Id.* Thus, in *Davis*, the Fifth Amendment due process claim arises in the employment context, and in this case the Fifth Amendment due process claim arises in the prison context. The substance of this claim is materially different from the claim asserted in *Davis*. Furthermore, Plaintiff's claim involves a new class of defendants—custodians, as opposed to employers. Plaintiff's Fifth Amendment due process claim is materially different than the Fifth Amendment

due process claim recognized by the Supreme Court in *Davis*, therefore it presents a "new context."

To the extent Plaintiff is asserting an Eighth Amendment claim, the Supreme Court recognized an implied private action against federal officials under the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14 (1980). *Carlson*, however, involved a claim that prison officials failed to provide an inmate with proper medical care. *Id.* Plaintiff's Eighth Amendment claim involves the conditions of his confinement (i.e., being classified as FRP refuse, and being placed in the SHU). In *Ziglar*, the Supreme Court found that the Eighth Amendment claims of noncitizens for unlawful detention and unconstitutional conditions of confinement did not resemble the Eighth Amendment medical care claim in *Carlson*. *Ziglar* at 1864. Similarly, Plaintiff's claims in this case, arising from the conditions of his confinement, are meaningfully different from the Eighth Amendment denial of adequate medical care claim recognized by the Supreme Court in *Carlson*.

> 2. Whether the Court Should Find an Implied Cause of Action under *Bivens* for Plaintiff's First, Fourth, Fifth, and Eighth Amendment Claims

Next, I turn to the assessment of: (1) whether there is an alternative remedial structure present; and (2) whether there are special factors counseling hesitation in the absence of affirmative action by Congress.

With respect to the first factor, whether an alternative remedial structure exists, Defendants argue:

> [I]n the context of prisoner litigation, courts have concluded that alternative processes exist, including civil rights claims for injunctive relief, the BOP's administrative remedy procedures for injunctive relief, FTCA claims for injuries, hearings before a Unit Discipline Committee pursuant to 28 C.F.R. § 541.7 for disciplinary incident reports, habeas corpus actions for disciplinary decisions that extend an inmate's confinement, constitutional violations asserted under previously recognized *Bivens* claim, as well as claims under the Administrative Procedures Act, 5 U.S.C. § 702.
>
> "Both the Tenth Circuit and the Supreme Court have recognized that suits for injunctive relief and grievances filed through the BOP's Administrative Remedy Program constitute an alternative means of preventing unconstitutional conduct." *Lovett v. Ruda, et al.*, Civil Action No. 17-cv-02010, 2018 WL 4659111, at *8 (D. Col. Sept. 28, 2018) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *K.B. v. Perez*, 664 Fed. App'x 756, 759 (10th Cir. 2016)). A plaintiff's inability to recover damages does not render either mechanism inadequate. *See Wilkie*, 551 U.S. at 550. "[A]ny alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* "The *Bivens* analysis appears to focus on the adequacy of remedies in the abstract rather than a particular plaintiff's track record in pursuing relief." *Lovett*, 2018 WL 4659111, at *9 (quoting *Wilkie*, 551 U.S. at 552-53).

(Doc. 27, pp. 24-25) (internal footnote omitted). Due to his failure to respond to Defendants' motion, Plaintiff has made no attempt to show that there is no alternative remedial structure available for him to pursue one or more of the claims he has attempted to assert under *Bivens*.

Defendants are correct that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar,* 137 S. Ct. at 1858. Furthermore, Courts have found that, in the prison context, depending on the nature of the claim at issue an alternative remedial structure available to federal prisoners through the BOP's administrative remedy process (which allows federal prisoners to seek review of any aspect of their confinement), filing a writ of habeas corpus, or seeking some other avenue of injunctive relief in the Courts. *See e.g. Ashford v. Travesio*, No. 17-CV-0164, 2018 U.S. Dist. LEXIS 18500 at *12 (D. Ariz. Feb. 2, 2018). I agree with Defendants' position that the presence of alternative remedial structures weighs against finding a new implied cause of action for Plaintiff's claims under *Bivens*.

Next, Defendants argue that special factors also weigh against finding new implied causes of action for Plaintiff's *Bivens* claims. They argue:

> Even if this Court were to determine that alternate remedies are unavailable to Simmons, those courts which have decided that inmate claims for access to court, due process and conditions of confinement represent new *Bivens* contexts, have also concluded that special factors counsel against extending *Bivens* in those contexts.

> This is so because "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 137 S. Ct. at 1865. The Prison Litigation Reform Act "itself does not provide for a standalone damages remedy against federal jailers." *Id.* Indeed, in passing the PLRA, Congress "placed a series of controls on prisoner suits . . . designed to prevent sportive filings in

federal court." *Skinner v. Switzer*, 562 U.S. 521, 535-36 (2011). The PLRA had the intent of "reduc[ing] the quantity of inmate suits." *Jones v. Bock*, 549 U.S. 199, 223 (2007).

*Ziglar* also instructs that the "decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide" and the "projected cost and consequences to the Government itself." *Id.* at 1858. Amongst the factors which courts have determined to counsel hesitation were implications on prison policies, the demand placed on prison employees facing claims and the litigation costs of defending them, the substantial deference owed to prison administrator' professional judgments, whether the prisoner's claim was of such gravity to require judicial intervention, and the increased expense incurred by the Government in litigating inmate claims based on retaliatory acts.

(Doc. 27, pp. 18-19) (internal footnote omitted).

I agree, Courts have found that special factors, including, but not limited to the fact that Congress has been active in the area of prisoner's rights but has not created a damages remedy, as well as the significant cost, time and energy associated with defending a *Bivens* action brought by an inmate are special factors that weigh against finding new implied causes of action under *Bivens* for the claims alleged by Plaintiff. Other courts have also found in similar cases that these special factors weigh against extending *Bivens* to claims like the First, Fifth, and Eighth Amendment claims alleged here. *See e.g. Ziglar v. Abbasi*, 137 S. Ct. 1843 (declining to extend *Bivens* to illegal immigrant's claims that the Warden's violated the Fourth and Fifth Amendments by subjecting the immigrant's to harsh prison conditions and punitive strip searches); *Gonzalez v. Brendt*, No. 4:16-CV-

4038, 2018 WL 1524752 (D. S.D. Mar. 28, 2018) (finding that the costs, time and energy associated with defending a *Bivens* action brought by an inmate were special factors that weighed against implying a new *Bivens* cause of action to an inmate's First Amendment retaliation claim); *Ashford v. Travesio*, 2018 U.S. Dist. LEXIS 18500 (D. Ariz. Feb 2, 2018) (refusing to extend *Bivens* to a prisoner's First Amendment claim that he was denied access to courts based on special factors and the existence of alternative remedies).

C. PLAINTIFF'S FOURTEENTH AMENDMENT AND ADMINISTRATIVE PROCEDURE ACT CLAIMS

As alluded to above, Plaintiff also references the Fourteenth Amendment and the APA in his Complaint. In a footnote, Defendants argue:

> Defendants also ask the Court to dismiss Simmons claims under the Fourteenth Amendment and APA because the Fourteenth Amendment applies exclusively to state actions and not to actions against the federal government. *See Corrigan v. Buckley*, 271 U.S. 323, 330 (1926). Additionally, Simmons' only stated request for relief is "$200,000.00 in compensation for Defendants actions." (Doc. 1, Compl. at 3) Such requests for money damages fall outside the APA's waiver of sovereign immunity. 5 U.S.C. § 702; *Bowen v. Massachusetts*, 487 U.S. 879, 893-94 (1988) (distinguishing APA claims from an action at law for damages).

(Doc. 27, n. 3).

Defendants are correct that the Fourteenth Amendment does not apply to federal actors—like the Defendants in this case. *Martucci v. Borough*, No. CV 3:17-1671, 2018 WL 1755728, at *2 n.3 (M.D. Pa. Apr. 10, 2018) (noting that "the

Fourteenth Amendment does not apply to plaintiff's claims against Ashmawy since plaintiff alleges that he is a federal officer"). Similarly, the only relief sought by Plaintiff in this case is monetary damages. A claim for money damages is not within the sovereign immunity waiver of the Administrative Procedure Act. *Forbes v. Reno*, 893 F.Supp. 476 (W.D. Pa. 1995). Therefore, to the extent Plaintiff is attempting to assert a Fourteenth Amendment claim against federal actors and a claim for money damages under the Administrative Procedure Act, these claims should be dismissed.

## IV.    RECOMMENDATION

For the reasons articulated herein, IT IS RECOMMENDED that:

(1) Plaintiff's Complaint be DISMISSED pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, WITHOUT FURTHER LEAVE TO AMEND; or in the alternative,

(2) Defendants' Motion to Dismiss (Doc. 20) be GRANTED.

(3) The Clerk of Court should CLOSE this case.

Date: August 23, 2019                        BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| ROOSEVELT SIMMONS, | ) | CIVIL ACTION NO. 3:16-cv-1083 |
|---|---|---|
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| WARDEN C. MAIORANA, *et al.,* | ) | |
| Defendants | ) | |

NOTICE OF LOCAL RULE 72.3

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: August 23, 2019                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge